IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

MAR -5 2010

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

BILLY J. HENDERSON,

    Plaintiff,

v.                       Civil Action No. 3:08cv207–HEH

CAPITAL CONSTRUCTION, *et al.*,

    Defendants.

## MEMORANDUM OPINION
### (Granting Motion For Summary Judgment And Dismissing Claims 1(a), 2(a), 3, 4, 5, and 6)

Plaintiff, a Virginia inmate proceeding *in forma pauperis*, filed this civil rights action. The matter is before the Court on the motion for summary judgment filed by Defendants Yaklin and Johnson and the Court's authority to review the Second Amended Complaint (Docket No. 75) pursuant to 28 U.S.C. § 1915A(b)(1).

## I. PLAINTIFF'S CURRENT CLAIMS FOR RELIEF

In the Second Amended Complaint, Plaintiff names as defendants, Todd Yaklin, Mikel Johnson, and Capital Construction.[1] Plaintiff contends that he is seeking damages under "42 U.S.C. [§] 1983" for "retali[a]tory discrimination, denial of medical care in violation of the Eight[h] Amendment, breach of contract, preferential treatment of white co-worker and a

---

[1] Yaklin is a Foreman and Electrical Supervisor for the Construction Unit for the Virginia Department of Corrections Architectural and Engineering Services ("the Construction Unit"). The Clerk is DIRECTED to correct the spelling of Yaklin's name on the Court's docket. Johnson is the Unit Manager of the Construction Unit. Plaintiff named Capital Construction as the third defendant. The record, however, reflects that Plaintiff intended to sue the Construction Unit. The Court has corrected the capitalization in the quotations to Plaintiff's submissions.

retali[a]tory transfer and termination of job." (2d Am. Compl. 1.) Plaintiff then specifies his claims for relief as follows:[2]

| | |
|---|---|
| Claim 1 | Defendants Johnson and Yaklin violated Plaintiff's "federal[ly] protected rights by firing him after he filed a racial complaint. This is retalitory [sic] discrimination." (2d Am. Compl. ¶ 22.)<br>(a) Plaintiff contends that such actions denied Plaintiff the equal protection guaranteed by the Fourteenth Amendment[3];<br>(b) Plaintiff contends that such actions amounted to unconstitutional retaliation. |
| Claim 2 | Defendant Johnson transferred Plaintiff "six hours away from his home to Southwest Virginia Region which is predominantly white people . . . . This is retali[a]tory discrimination." (2d Am. Compl. ¶ 23.)<br>(a) Plaintiff contends that such actions denied Plaintiff the equal protection guaranteed by the Fourteenth Amendment;<br>(b) Plaintiff contends that such actions amounted to unconstitutional retaliation. |
| Claim 3 | Defendant Yaklin violated Plaintiff's rights under the Eighth Amendment[4] when he failed to provide Plaintiff access to medical care after Plaintiff was burned by a drill bit. (2d Am. Compl. ¶ 24.) |
| Claim 4 | "The white co-worker was allowed to continue working fo[r] [the Construction Unit] even after he assaulted [Plaintiff]. [Plaintiff] was fired[.] This is a[n] indifference to [Plaintiff's] federally protect[ed] rights and a violation of [the] Eight[h] Amendment." (2d Am. Comp. ¶ 25.) |
| Claim 5 | Plaintiff "signed a contract with [the Construction Unit] in March of 2007, [Plaintiff] did not violate any part of his contract, th[e]refore I say that [the Construction Unit] has breached the contract." (2d Am. Comp. ¶ 26.) |

---

[2] Plaintiff has invoked this Court's jurisdiction under 42 U.S.C. § 1985(3), which pertains to conspiring to deprive persons of their rights. (Pl.'s Mot. to Am. Initial Filings for Jurisdiction Supplementation (Docket No. 72).) Plaintiff, however, has not attempted to plead a claim for relief under that statute. *See Francis v. Giacomelli*, 588 F.3d 186, 196-97 (4th Cir. 2009).

[3] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Claim 6 Defendants Johnson and Yaklin agreed to let Plaintiff "work at another job [site]. But they broke the agreement and fired [Plaintiff] for no reason.... This is a breach of contract." (2d Am. Comp. ¶ 27.)

During the course of the litigation, the Court repeatedly has informed Plaintiff that he cannot spackle allegations onto an existing complaint. By Memorandum Order entered on August 10, 2009, the Court granted Plaintiff's motion to amend and informed Plaintiff that the action would proceed solely on the allegations and claims in the proposed amended complaint that accompanied the motion (the Second Amended Complaint.) Given the above history and principles, the Court will not construct claims based on allegations in Plaintiff's submissions that preceded the Second Amended Complaint or in materials submitted in opposition to the motion for summary judgment filed by Defendants Yaklin and Johnson. *See Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 & n.16 (4th Cir. 2008) (No. 07-1084); *Williams v. Harvey*, No. 4:05CV161, 2006 WL 2456406, at *6 (E.D. Va. Aug. 21, 2006).

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When

the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)). Furthermore,"'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)).

In support of their motion for summary judgment, Defendants Johnson and Yaklin have submitted affidavits, and a copy of the standard work agreement for inmates in the Construction Unit. Plaintiff has responded by submitting two affidavits (Docket Nos. 63, 64), some correspondence, medical records, some grievance material, and a report of an institutional investigation conducted by Lieutenant L. Naar.[5] Of course, the facts offered by affidavit must be

---

[5] During the course of this litigation, Plaintiff has deposited numerous documents with the Court. By Memorandum Order entered on September 21, 2009, the Court informed Plaintiff that to the extent he wished the Court to consider any evidence in opposition to the motion for summary judgment filed by Defendants Yaklin and Johnson on August 21, 2009, he must submit an appropriate memorandum identifying the evidence and explaining its relevance. In light of this, the Court will consider Plaintiff's "Brief In Opposition For Motion For Summary Judgment," filed on August 25, 2009, which asks the Court to consider his opposition to

in the form of admissible evidence. *See* Fed. R. Civ. 56(e). Thus, a statement in the affidavit or sworn statement "must be made on personal knowledge . . . and show that affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Further, summary judgment affidavits must "set out specific facts." Fed. R. Civ. P. 56(e)(2). Therefore, "summary judgment affidavits cannot be conclusory . . . or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)). Thus, the parties' hearsay allegations, and conclusory allegations will not be considered in reviewing the motion for summary judgment.[6]

In light of the foregoing principles and submissions, the following facts are established for purposes of the motions for summary judgment.

### III. SUMMARY OF FACTS

In September of 2007, Plaintiff was working with the Construction Unit. The Construction Unit employs eighty to ninety inmates at any given time to work on construction projects at State prisons. (Defs.' Br. in Supp. of Summ. J. Ex II. ("Johnson Aff.") ¶ 4.) The James River Work Center is the home base for housing the inmate work force for the Construction Unit. (Johnson Aff. ¶ 9.) Inmates employed by the Construction Unit sign a

---

summary judgment from March of 2009 and "Facts Of Issues That Needs To Be Deliberated In Court," filed on August 28, 2009. Additionally, the Court will consider Plaintiff's more recent submissions.

[6] For example, Plaintiff's statement that "Yaklin told other workers that if I dropped the complaint I could come back to work" (Docket No. 63 ("Pl.'s 1st Aff.") ¶ 5.) and Defendant Yaklin's statements regarding what Plaintiff told Foreman Patterson will not be considered because they do not appear to be based upon personal knowledge. (Defs.' Br. in Supp. of Mot. for Summ. J. Ex. I, ("Yaklin Aff.") ¶ 7.)

5

standard agreement whereby they agree to travel whereever they are needed and stay there as long as required. (Johnson Aff. ¶ 9; Johnson Aff. Encl. A.)

On September 19, 2007, Plaintiff was among a group of inmates doing construction work at St. Brides Correctional Center ("St. Brides"). (Yaklin Aff. ¶ 4.) Plaintiff is black. A crew of three inmates, which included inmate Cohrs, who is white, was assigned to hang metal panels in the shower area. (Yaklin Aff. ¶¶ 4, 6.) Plaintiff was assigned to clean up behind the crew of three inmates hanging the metal panels. (Yaklin Aff. ¶ 4.) Defendant Yaklin checked on the crew of inmates hanging the panels in the shower area and noticed they were talking and joking with each other. Defendant Yaklin left the shower area to check on another project. Shortly thereafter, inmate Cohrs burned Plaintiff on the back of the neck with a red hot drill bit. (Pl.'s 1st Aff. ¶ 3.) The parties dispute what happened next.

According to Plaintiff, when he was burned by the drill bit, he screamed and went to find Defendant Yaklin.[7] (Pl.'s 1st Aff. ¶ 3.) Plaintiff told Defendant Yaklin that he wanted medical attention, but Defendant Yaklin denied Plaintiff access to such medical attention. (Pl.'s 1st Aff. ¶ 3.) About thirty minutes after the assault, Plaintiff showed Defendant Yaklin the skin on his neck where it was beginning to peel because of the burn. (Pl.'s 1st Aff. ¶ 4.)

---

[7] According to Defendant Yaklin, when he returned to the shower area fifteen minutes or so later, he noticed the inmates were laughing. When Defendant Yaklin inquired as to the cause of their mirth, "Henderson laughed and stated that Cohrs had burned him on the neck with a hot drill bit. When [Yaklin] asked how it happened, Henderson stated that the inmates had been playing around. He said he was fine and briefly showed me his neck, but [Yaklin] did not see the injury." (Yaklin Aff. ¶ 6.) Defendant Yaklin "told [Plaintiff] to go to medical, and he again stated that he was okay." (Yaklin Aff. ¶ 6.) Defendant Yaklin "instructed the inmates to get back to work and to stop playing around." (Yaklin Aff. ¶ 6.) Defendant Yaklin insists that "[h]ad [Plaintiff] requested medical attention, I would have immediately sent him to the medical department." (Yaklin Aff. ¶ 6.) Defendant Yaklin swears that he had "no reason to believe that the incident between [Plaintiff] and Cohrs was anything but horseplay." (Yaklin Aff. ¶ 12.)

6

At some point, Defendant Yaklin warned Plaintiff that if Plaintiff reported the assault to the St. Bride's staff, Plaintiff would not be allowed to work anymore. (Pl.'s 1st Aff. ¶ 5.) Plaintiff worked until the close of business that day. Plaintiff and the other inmates then returned to their dormitory. (Yaklin Aff. ¶ 7.)

Upon returning to his dormitory, Plaintiff reported the incident to Ms. Towns, his counselor at St. Brides. (Pl.'s 1st Aff. ¶ 13.) Ms. Towns encouraged Plaintiff to go the medical department to have his burn examined. (Pl.'s 1st Aff. ¶ 13.) Nevertheless, Plaintiff waited two more days, until Friday, September 21, 2007, to submit a request to be seen in the medical department. (Pl.'s 1st Aff. ¶ 13.) On September 23, 2007, Plaintiff was seen in the medical department and a topical ointment and a band-aid were applied to his injury. On September 25, 2007, Dr. Harris examined Plaintiff and prescribed cocoa butter to help return Plaintiff's skin color. Although Plaintiff swears he was in a great deal of pain, he does not suggest that Dr. Harris believed any further treatment was warranted for Plaintiff's injury.[8]

On Saturday, September 22, 2007, Plaintiff reported the incident with inmate Cohrs to Sergeant Sutton. (Pl.'s 1st Aff. ¶ 15.) On Monday, September 24, 2007, Plaintiff and Cohrs reported for work. (Yaklin Aff. ¶ 9.) Before lunch, however, Plaintiff and Cohrs were required to return to the institution for an investigation. Later, in the day, the institutional investigator informed Yaklin that Plaintiff could return to work, but that Cohrs could not return to work. (Yaklin Aff. ¶ 9.) Yaklin told the institutional investigator that it was late in the day and neither

---

[8] Plaintiff contends that he sustained "a third degree burn." (Pl.'s Resp. to Mot. for Summ. J. Pl.'s 2d Aff. ("Pl.'s 2d Aff.") ¶ 1.) Plaintiff, however, is not competent to diagnose the degree of burn he sustained. *See Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001) (concluding inmate was incompetent to offer opinion as to causal connection between his lack of exercise and unhealthy gums).

7

inmate should return to work until the issue was resolved. (Yaklin Aff. ¶ 9.) On Tuesday, September 25, 2007, Plaintiff attempted to return to work, but Yaklin told him that he could not return to work until the investigation concluded. (Yalkin Aff. ¶ 10.)

Inmate Cohrs initially was charged with the institutional offense of simple assault upon another inmate. (Defs.' Br. in Supp. of Summ. J. Ex. 3 ("Cahoon Aff.") ¶ 3.) D. Cahoon is the Inmate Hearings Officer at St. Brides. (Cahoon Aff. ¶ 1.) After reviewing the evidence and Cohrs's representation that the incident was horse play, Hearings Officer Cahoon convicted Cohrs of the institutional offense of failure to follow institutional rules. (Cahoon Aff. ¶¶ 3-4.)

After the conclusion of the institutional investigation, the Warden of St. Brides informed Defendant Johnson that Plaintiff was free to return to work. (Johnson Aff. ¶ 5.) Nevertheless, the Warden recommended that Cohrs and Plaintiff should be separated and should not continue to work at St. Brides. (Johnson Aff. ¶ 5.) Cohrs was fired from his job at St. Brides and eventually transferred back to the James River Work Center.[9] (Yaklin Aff. ¶ 10.) Defendant Yaklin represents that because the charge against Cohrs "was minor and he was a skilled worker," upon his return to the James River Work Center, Cohrs was rehired by the Construction Unit.[10] (Yaklin Aff. ¶ 10.)

Based upon the information he had received from the Warden and Defendant Yaklin, Defendant Johnson determined to transfer Plaintiff to another work site in order to separate

---

[9] Cohrs was transferred from St. Brides sometime between October 10, 2007 and November 10, 2007. (Johnson Aff. ¶¶ 6-7.)

[10] Neither party has offered much useful evidence as to what qualities make an individual a skilled worker. Plaintiff disputes that Cohrs was a skilled worker. (Pl.'s 2d Aff. ¶ 3.) Plaintiff contends that to be a skilled worker, one must operate heavy machinery. (Pl.'s 2d Aff. ¶ 3.)

Plaintiff and Cohrs. (Johnson Aff. ¶¶ 5, 6.) At that time the only available job vacancies were in the Southwestern area of Virginia. (Johnson Aff. ¶ 7.) On October 10, 2007, Plaintiff was transferred to the Wise Correctional Unit #18 ("Wise"), where a construction project for window replacement was underway. (Johnson Aff. ¶ 7.) Defendants Yaklin and Johnson both swear that Plaintiff's race played no role in the decision to transfer him from St. Brides. (Yaklin Aff. ¶ 12; Johnson Aff. ¶ 10.)

Plaintiff remained at Wise until he finished the window project. (Johnson Aff. ¶ 7.) Upon completion of the project, the foreman at Wise informed Johnson that Plaintiff's skills were not required for the next project, which was quarry tile replacement. (Johnson Aff. ¶ 7.) The Superintendent at Wise asked that Plaintiff not remain at his facility because "he was making trouble within the ranks of the other inmates." (Johnson Aff. ¶ 7.) Defendant Johnson called the Classification Services Department of the Virginia Department of Corrections and explained that Plaintiff "should be moved to another facility for work." (Johnson Aff. ¶ 8.) On November 20, 2007, Plaintiff was transferred to Pulaski Correctional Unit #1. (Johnson Aff. ¶ 8.). It appears that Plaintiff ceased to work for the Construction Unit after he was moved to Pulaski Correctional Unit #1.

## IV. ANALYSIS

The Court notes that Defendants Yaklin and Johnson have not addressed Claims 1(b) and 2(b) wherein Plaintiff contends that he was the victim of unconstitutional retaliation for reporting an assault upon his person. Hence, those claims are not addressed in this Memorandum

Opinion.[11] The Court, however, will review Plaintiff's claims against the Construction Unit pursuant to 28 U.S.C. § 1915A(b)(1). That statute directs the Court to dismiss those claims filed by a prisoner if the Court determines the claim (1) "is frivolous" or (2) "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

A.  **Equal Protection Claims**

In order to survive summary judgment with respect to an equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* (citing cases). Although Plaintiff is not required to show that racial animus was the sole motivation for the allegedly discriminatory conduct, he must produce evidence from which a jury could conclude that Defendants treated him differently because of his race. *Pena v. Porter*, 316 F. App'x 303, 317 (4th Cir. 2009) (Nos. 07-1768, 07-1891) (citing *Farm Labor Org. v. Ohio State Highway Patrol*, 308 F.3d 523, 536 (6th Cir. 2002)).

---

[11] The Court declines to find at this juncture that Claims 1(b) and 2(b) are so lacking in legal and factual merit as to be subject to summary dismissal. *See Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Gullet v. Wilt*, No. 88-6797, 1989 WL 14614, at *2 (4th Cir. Feb. 21, 1989).

10

Plaintiff contends his equal protection rights were violated because his "white co-worker [Cohrs] enjoyed the full benefit of continuing to work for [the Construction Unit] on the same crew. The Plaintiff was sent across state and then fired." (Pl.'s Resp. to Mot. for Summ. J. ¶ 9). There is no merit to Plaintiff's equal protection claims with respect to his transfer. Contrary to Plaintiff's suggestion, both Plaintiff and inmate Cohrs were transferred from St. Brides shortly after the drill bit incident. Thus, Plaintiff has failed to demonstrate that, with respect to the transfer, he was treated different than Cohrs. *See Morrison*, 239 F.3d at 654. Moreover, Plaintiff has failed to introduce evidence from which a reasonable jury could conclude that either his transfer or his eventual termination from employment was motivated by Plaintiff's race. Rather, the record reflects that Defendant Johnson decided to transfer Plaintiff from St. Brides because the Warden of St. Brides did not wish Plaintiff to remain at the institution. (Johnson Aff. ¶¶ 5, 6.)

The fact that Plaintiff eventually was terminated from employment while inmate Cohrs was fired and rehired by the Construction Unit is not sufficient in itself to demonstrate intentional discrimination based on Plaintiff's race. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) ("Although disproportionate impact is not irrelevant, *see Washington v. Davis*, 426 U.S. 229, 242 (1976), mere disparate impact is insufficient to demonstrate an equal protection violation." (citing *Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994))); *Butler v. Cooper*, 554 F.2d 645, 647 (4th Cir. 1977).[12] Plaintiff does not introduce any evidence that has traditionally "'been recognized as probative of whether a [defendant] was motivated by a

---

[12] Cohrs was fired immediately after he was convicted of an institutional offense related to the assault, while Plaintiff was sent to a new work assignment. Thus, it is not clear whether Plaintiff's treatment was less favorable than that of the comparator white inmate.

discriminatory intent,'" such as a "'history of discrimination'" by Defendants, or "'contemporary statements by decisionmakers' evidencing intentional discrimination." *Townes v. Jarvis*, 577 F.3d 543, 552 (4th Cir. 2009) (quoting *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 819 (4th Cir. 1995)).[13] Plaintiff's unsubstantiated, conclusory allegations that Defendants Yaklin's and Johnson's decisions were motivated by racial animus are insufficient to stave off summary judgment. *See id.* Accordingly, Claims 1(a) and 2(a) will be dismissed with prejudice.

## B. Eighth Amendment Claims

In order for an Eighth Amendment claim to survive summary judgment, a plaintiff must demonstrate: (1) that objectively the deprivation suffered or harm inflicted was "'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).[14] Under the objective prong the inmate must demonstrate that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). The resulting harm to the inmate is particularly pertinent in assessing whether

---

[13] Plaintiff asserts that while working for the Construction Unit, he has seen Defendant Johnson "fire black inmates for such things as tobacco paper in their lockers, fighting, and not working hard enough." (Pl.'s 1st Aff. ¶ 8.) Even if these conclusory statements were competent evidence, which is doubtful, *see Causey v. Balog*, 162 F.3d 795, 801-02 (4th Cir. 1998), Plaintiff does not offer evidence indicating that Defendant Johnson did not fire white inmates for similar infractions.

[14] The subjective component requires a plaintiff to produce evidence that indicates a defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

a distasteful condition was sufficiently extreme so as to constitute an unconstitutional infliction of punishment. *Id.* at 1381. Thus, "in order to withstand summary judgment . . . a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Id.* Furthermore, where the claim is predicated on a delay in the provision of medical care, Plaintiff must demonstrate "that the delay resulted in substantial harm." *Webb v. Hamidullah*, 281 F. App'x 159, 167 n.13 (4th Cir. 2008) (No. 06-7381) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000))). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citing cases).

Plaintiff has not submitted evidence that the delay in access to medical care (rather than the initial trauma) caused him any "lifelong handicap [or] permanent loss." *Id.* Thus, Plaintiff must demonstrate that the delay in access to medical care caused him considerable pain. *Id.* He has not done so.

The Court notes at the outset that Defendant Yaklin only was responsible for the brief delay in medical care during the work day. The record indicates that after Plaintiff left work and returned to his dorm he could have obtained medical care by submitting a request for the same. Indeed, Ms. Towns, Plaintiff's counselor, encouraged Plaintiff to go the medical department if Plaintiff wished medical attention. (Pl.'s 1st Aff. ¶ 13.) Nevertheless, Plaintiff waited two more days, until Friday, September 21, 2007, to submit a request to be seen in the medical department. (Pl.'s 1st Aff. ¶ 13.)

When Plaintiff was seen in the medical department, the sum of medical care that was provided was a band-aid, topical ointment, and cocoa butter. There is no evidence that Plaintiff

13

was provided with any pain medication. Although Plaintiff now suggests that a couple days after the drill bit incident he was "in a lot of pain" (Pl. 1st Aff. ¶ 14.), his languid pursuit of medical care and the sum of medical care provided belie the notion that he was in acute physical distress shortly after the incident. Furthermore, Plaintiff has failed to explain, much less demonstrate, how more expeditious access to medical care would have alleviated any suffering. *Beers v. Ballard*, 248 F. App'x 988, 991-92 (10th Cir. 2007) (No. 06-5104) (dismissing action where plaintiff presented no evidence indicating a quicker response would have resulted in a different outcome). Plaintiff has failed to produce evidence from which a reasonable jury could conclude that the short delay in access to medical care occasioned by Defendant Yaklin was the cause of considerable pain to Plaintiff. *See Braxton v. Wyandotte County Sheriff's Dep't*, 206 F. App'x 791, 793 (10th Cir. 2006) (No. 06-3302); *Sealock*, 218 F.3d at 1210 ("[N]ot every twinge of pain suffered as the result of delay in medical care is actionable."). Accordingly, Claim 3 will be dismissed.

In Claim 4, Plaintiff contends that his loss of a prison job amounts to a violation of the Eighth Amendment. Claim 4 is subject to dismissal under 28 U.S.C. § 1915A(b)(1). Plaintiff was required to allege facts in his Second Amended Complaint that plausibly suggest he sustained "'a serious or significant physical or emotional injury resulting from the'" loss of his employment. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). He has not done so. *See White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993). Accordingly, Claim 4 will be dismissed for failure to state a claim and as legally frivolous.

## C. Breach of Contract Claims

Virginia adheres to the doctrine of employment at will. *See Graham v. Cent. Fid. Bank*, 428 S.E.2d 916, 917 (Va. 1993). Under this doctrine, "the employer or the employee may terminate the employment relationship for any or no explanation with reasonable notice." *Williamson v. Va. First Sav. Bank*, 26 F. Supp. 2d 798, 801 (E.D. Va. 1998) (citing *Doss v. Jamco*, 492 S.E.2d 441, 443 (Va. 1997)). "Although there is a strong presumption in Virginia that all employment is at will, that presumption can be rebutted by proving that the employee had an employment contract for a specified term or had an employment contract that stated that the employee may be terminated only for cause." *Ralte v. Helen Keller Int'l Inc.*, Nos. 97-1214, 97-1349, 1998 WL 168350, at *2 (4th Cir. Mar. 31, 1998) (internal citations and quotations omitted). Here, Plaintiff's agreement with the Construction Unit does not suggest that the Plaintiff's employment was for a specified term or could only be terminated for cause.[15] (Johnson Aff. Encl. A.) Accordingly, Plaintiff has failed to state a plausible claim for breach of contract. Claims 5 and 6 will be dismissed.

## V. CONCLUSION

The motion for summary judgment will be granted. Should any party wish to file a dispositive motion with respect to the remaining claims, they must do so within forty-five (45) days of the date of entry hereof. The parties are advised that any motion for summary judgment,

---

[15] In considering Plaintiff's claims against the Construction Unit under 28 U.S.C. § 1915A(b)(1), the Court may consider dispositive documents, such as Plaintiff's agreement with the Construction Unit that was referenced in the Second Amended Complaint. *Heretick v. Amberley Shipping Corp.*, 227 F. Supp. 2d 575, 577 (E.D. Va. 2002) (citing *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496 (E.D. Va. 1997)).

or response thereto, must conform to Rule 56(b) of the Local Civil Rules for the United States District Court for the Eastern District of Virginia.[16]

An appropriate Order shall accompany this Memorandum Opinion.

                                         /s/
                               HENRY E. HUDSON
Date: March 4 2010             UNITED STATES DISTRICT JUDGE
Richmond, Virginia

---

[16] All citations to the record should, when possible, refer to the specific paragraph of a supporting document.