IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

BILLY J. HENDERSON, )
)
Plaintiff, )
)
v. ) Civil Action No. 3:08cv207–HEH
)
CAPITAL CONSTRUCTION, *et al.*, )
)
Defendants. )

## MEMORANDUM OPINION
(Granting Motion For Summary Judgment)

Plaintiff, a former Virginia inmate proceeding *in forma pauperis*, filed this civil rights action. The matter is before the Court on the motion for summary judgment filed by Defendants Yaklin and Johnson.

## I. PROCEDURAL HISTORY

In the Second Amended Complaint, Plaintiff names as defendants, Todd Yaklin, Mikel Johnson, and Capital Construction.[1] Plaintiff contends that he is seeking damages under "42 U.S.C. [§] 1983" for "retali[a]tory discrimination, denial of medical care in violation of the Eight[h] Amendment, breach of contract, preferential treatment of white co-worker and a retali[a]tory transfer and termination of job." (2d Am. Compl. 1.) Plaintiff then specifies his claims for relief as follows:[2]

---

[1] Yaklin is a Foreman and Electrical Supervisor for the Construction Unit for the Virginia Department of Corrections Architectural and Engineering Services ("the Construction Unit"). Johnson is the Unit Manager of the Construction Unit. Plaintiff named Capital Construction as the third defendant. The record, however, reflects that Plaintiff intended to sue the Construction Unit. The Court has corrected the capitalization in the quotations to Plaintiff's submissions.

[2] Plaintiff has invoked this Court's jurisdiction under 42 U.S.C. § 1985(3), which pertains to conspiring to deprive persons of their rights. (Pl.'s Mot. to Am. Initial Filings for Jurisdiction

| | |
|---|---|
| Claim 1 | Defendants Johnson and Yaklin violated Plaintiff's "federal[ly] protected rights by firing him after he filed a racial complaint. This is retalitory [sic] discrimination." (2d Am. Compl. ¶ 22.)<br>(a) Plaintiff contends that such actions denied Plaintiff the equal protection guaranteed by the Fourteenth Amendment[3];<br>(b) Plaintiff contends that such actions amounted to unconstitutional retaliation. |
| Claim 2 | Defendant Johnson transferred Plaintiff "six hours away from his home to Southwest Virginia Region which is predominantly white people.... This is retali[a]tory discrimination." (2d Am. Compl. ¶ 23.)<br>(a) Plaintiff contends that such actions denied Plaintiff the equal protection guaranteed by the Fourteenth Amendment;<br>(b) Plaintiff contends that such actions amounted to unconstitutional retaliation. |
| Claim 3 | Defendant Yaklin violated Plaintiff's rights under the Eighth Amendment[4] when he failed to provide Plaintiff access to medical care after Plaintiff was burned by a drill bit. (2d Am. Compl. ¶ 24.) |
| Claim 4 | "The white co-worker was allowed to continue working fo[r] [the Construction Unit] even after he assaulted [Plaintiff]. [Plaintiff] was fired[.] This is a[n] indifference to [Plaintiff's] federally protect[ed] rights and a violation of [the] Eight[h] Amendment." (2d Am. Compl. ¶ 25.) |
| Claim 5 | Plaintiff "signed a contract with [the Construction Unit] in March of 2007, [Plaintiff] did not violate any part of his contract, th[e]refore I say that [the Construction Unit] has breached the contract." (2d Am. Compl. ¶ 26.) |
| Claim 6 | Defendants Johnson and Yaklin agreed to let Plaintiff "work at another job [site]. But they broke the agreement and fired [Plaintiff] for no reason.... This is a breach of contract." (2d Am. Compl. ¶ 27.) |

---

Supplementation (Docket No. 72).) Plaintiff, however, has not attempted to plead a claim for relief under that statute. *See Francis v. Giacomelli*, 588 F.3d 186, 196-97 (4th Cir. 2009).

[3] "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

2

By Memorandum Opinion and Order entered on March 5, 2010, the Court granted a motion for summary judgment filed by Yaklin and Johnson (hereinafter collectively "Defendants") and dismissed all of Plaintiff's claims except for Claims 1(b) and 2(b).[5] Defendants now have moved for summary judgment with respect to Claims 1(b) and 2(b). Plaintiff has responded. The motion for summary judgment is ripe for disposition.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324, 166 S. Ct. at 2553 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) & 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the

---

[5] Defendants failed to address Claim 1(b) and 2(b) in their prior motion for summary judgment.

3

nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986)). Nevertheless, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Furthermore,"'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)).[6]

In support of their motion for summary judgment, Defendants have submitted affidavits.[7] Plaintiff has responded by submitting his second affidavit (Pl.'s 2d Aff., ECF No. 104), a copy of the standard work agreement for inmates in the Construction Unit, some correspondence, and a portion of a report of an institutional investigation conducted by Lieutenant L. Naar. Of course, the facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. P.

---

[6] During the course of this litigation, Plaintiff has deposited numerous documents with the Court. The Court has repeatedly admonished that, to the extent he wished the Court to consider any documents in opposition to the motion for summary judgment, he must specifically identify the document in his opposition to the motion for summary judgment. (Mem. Order issued Sept. 21, 2009 at 2 n.3; Mem. Op. issued Mar. 5, 2010 at 4 n.5.) Therefore, the Court only considers in opposition to the second motion for summary judgment evidence Plaintiff has submitted in opposition to the second motion or specifically referenced in his brief opposing the second motion for summary judgment.

[7] Specifically, Defendants rely upon the affidavits they submitted in support of their first motion for summary judgment. (Defs.' Br. Supp. Mot. Summ. J. (Dk. No. 50) Ex. I ("Yaklin Aff."), Ex. II ("Johnson Aff.") and Ex. III ("Cahoon Aff.") .) Additionally, Defendants have submitted supplemental affidavits in support of their present motion for summary judgment. (Defs.' Br. Supp. 2d Mot. Summ. J. Ex. IV ("Yaklin Supp'l Aff."), Ex. V ("Johnson Supp'l Aff.").)

56(c)(2). In this regard, the statement in the affidavit or sworn statement "must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Furthermore, summary judgment affidavits must "set out facts." *Id.* Therefore, "summary judgment affidavits cannot be conclusory . . . or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)). Thus, the parties' conclusory allegations will not be considered in reviewing the motion for summary judgment.[8] In light of the foregoing principles and submissions, the following facts are established for purposes of the motion for summary judgment.

### III. SUMMARY OF FACTS

In September of 2007, Plaintiff was working with the Construction Unit. The Construction Unit employs eighty to ninety inmates at any given time to work on construction projects at State prisons. (Johnson Aff. ¶ 4.) The James River Work Center is the home base for housing the inmate work force for the Construction Unit. (Johnson Aff. ¶ 9.) Inmates employed by the Construction Unit sign a standard agreement whereby they agree to travel wherever they are needed and stay there as long as required. (Johnson Aff. ¶ 9; Johnson Aff. Encl. A.)

On September 19, 2007, Plaintiff was among a group of inmates doing construction work at St. Brides Correctional Center ("St. Brides"). (Yaklin Aff. ¶ 4.) Plaintiff is black. A crew of

---

[8] For example, Plaintiff's statement that "the Plaintiff was transferred six hours away from home to Wise County in retaliation for filing a complaint" (Pl.'s 2d Aff. ¶ 2.) and Yaklin's statements regarding what Plaintiff told Foreman Patterson will not be considered. (Yaklin Aff. ¶ 7.) Plaintiff's statement is conclusory and Yaklin's statement does not appear to be based on personal knowledge.

5

three inmates, which included inmate Cohrs, who is white, was assigned to hang metal panels in the shower area. (Yaklin Aff. ¶¶ 4, 6.) Plaintiff was assigned to clean up behind the crew of three inmates hanging the metal panels. (*Id.* ¶ 4.) Yaklin checked on the crew of inmates hanging the panels in the shower area and noticed they were talking and joking with each other. (*Id.* ¶ 5.) Yaklin left the shower area to check on another project. Shortly thereafter, inmate Cohrs burned Plaintiff on the back of the neck with a red hot drill bit. (Pl.'s 2d Aff. ¶ 3.) Plaintiff located Yaklin and told him that inmate Cohrs had burned him on the back of the neck. (*Id.*)[9]

According to Yaklin, when he returned to the shower area fifteen minutes or so later, he noticed the inmates were laughing. When Yaklin inquired as to the cause of their mirth, "[Plaintiff] laughed and stated that Cohrs had burned him on the neck with a hot drill bit. When [Yaklin] asked how it happened, [Plaintiff] stated that the inmates had been playing around. He said he was fine and briefly showed me his neck, but [Yaklin] did not see the injury." (Yaklin Aff. ¶ 6.) Yaklin "told [Plaintiff] to go to medical, and he again stated that he was okay." (*Id.* ¶ 6.) Yaklin "instructed the inmates to get back to work and to stop playing around." (*Id.*) Yaklin insists that "[h]ad [Plaintiff] requested medical attention, I would have immediately sent him to

---

[9] In response to the prior motion for summary judgment, Plaintiff disputed what happened next. According to Plaintiff, when he was burned by the drill bit, he screamed and went to find Yaklin. (Pl.'s 1st Aff. (Dk. No. 63) ¶ 3.) Plaintiff told Yaklin that he wanted medical attention, but Yaklin denied Plaintiff access to such medical attention. (Pl.'s 1st Aff. ¶ 3.) About thirty minutes after the assault, Plaintiff showed Yaklin the skin on his neck where it was beginning to peel because of the burn. (Pl.'s 1st Aff. ¶ 4.)

the medical department." (*Id.*) Yaklin swears that he had "no reason to believe that the incident between [Plaintiff] and Cohrs was anything but horseplay." (*Id.* ¶ 12.)

At some point, Yaklin warned Plaintiff that if Plaintiff reported the assault to the St. Bride's staff, Plaintiff would not be allowed to work anymore. (Pl.'s 2d Aff. ¶ 5.) Plaintiff worked until the close of business that day. Plaintiff and the other inmates then returned to their dormitory. (Yaklin Aff. ¶ 7.) Yaklin did not file an incident report. (Pl.'s 2d Aff. ¶ 4.)

On September 19, 2007, Cohrs was charged with the institutional infraction of "simple assault upon an offender" for placing the drill bit on Plaintiff's neck. (Cahoon Aff. ¶ 3.) On Monday, September 24, 2007, Plaintiff and Cohrs reported for work. (Yaklin Aff. ¶ 9.) Before lunch, however, Plaintiff and Cohrs were required to return to the institution for an investigation. Later in the day, the institutional investigator informed Yaklin that Plaintiff could return to work, but that Cohrs could not return to work. (*Id.*) Yaklin told the institutional investigator that it was late in the day and neither inmate should return to work until the issue was resolved. (*Id.*) On Tuesday, September 25, 2007, Plaintiff attempted to return to work, but Yaklin told him that he could not return to work until the investigation concluded. (*Id.* ¶ 10.) After the investigation was concluded, Yaklin told Lieutenant Naar "that he did not want [Plaintiff] out working with CCU because of the allegations [Plaintiff] made about the incident being racially motivated." (Pl.'s Br. Opp'n 2d Mot. Summ. J., Institutional Investigation.)

D. Cahoon is the Inmate Hearings Officer at St. Brides. (Cahoon Aff. ¶ 1.) After reviewing the evidence and Cohrs's representation that the incident was horseplay, Hearings Officer Cahoon convicted Cohrs of the institutional offense of failure to follow institutional rules. (*Id.* ¶¶ 3-4.)

After the conclusion of the institutional investigation, the Warden of St. Brides informed Johnson that Plaintiff was free to return to work. (Johnson Aff. ¶ 5.) Nevertheless, the Warden of St. Brides recommended that Cohrs and Plaintiff should be separated. (*Id.*) The Warden further recommended to Johnson that Plaintiff should not continue to work at St. Brides.[10] (*Id.*) Johnson swears that Plaintiff "was not fired, nor was [he] retaliated against or transferred to Wise Correctional Unit (Wise Unit) in Southwest Virginia because he filed a complaint." (Johnson Supp'l Aff. ¶ 4.) Rather, based upon the information he had received from the Warden of St. Brides and Yaklin, Johnson determined to transfer Plaintiff to another work site in order to separate Plaintiff and Cohrs. (Johnson Aff. ¶¶ 5, 6; Johnson Supp'l Aff. ¶ 4.) At that time, the only available job vacancies were in the Southwestern area of Virginia. (Johnson Aff. ¶ 7; Johnson Supp'l Aff. ¶ 4.) On October 10, 2007, Plaintiff was transferred to the Wise Correctional Unit #18 ("Wise Unit"), where a construction project for window replacement was underway. (Johnson Aff. ¶ 7.)

Plaintiff remained at the Wise Unit until he finished the window project. (*Id.*) Upon completion of the project, the foreman at the Wise Unit informed Johnson that Plaintiff's skills were not required for the next project, which was quarry tile replacement. (Johnson Aff. ¶ 7; Johnson Supp'l Aff. ¶ 5.) The Superintendent at the Wise Unit informed Johnson that Plaintiff "had been a problem and he did not want [Plaintiff] at that prison any longer." (Johnson Supp'l Aff. ¶ 5; Johnson Aff. ¶ 7.) "At that time, [Johnson] decided that [Plaintiff] would be removed

---

[10] Cohrs was fired from his job at St. Brides and eventually transferred to the James River Work Center. (Yaklin Aff. ¶ 10.) Cohrs was transferred from St. Brides sometime between October 10, 2007 and November 10, 2007. (Johnson Aff. ¶¶ 6-7.) Yaklin represents that because the charge against Cohrs "was minor and he was a skilled worker," upon his return to the James River Work Center, Cohrs was rehired by the Construction Unit. (Yaklin Aff. ¶ 10.)

8

from the Capital Construction Unit." (Johnson Supp'l Aff. ¶ 5.) Johnson swears that his "decision in that regard was based on information conveyed to me that [Plaintiff] had been causing problems among the other workers at Wise Unit and, according to the Superintendent at Wise, [Plaintiff] was generally a problem inmate." (Johnson Supp'l Aff. ¶ 5.) On November 20, 2007, Plaintiff was transferred to Pulaski Correctional Unit #1. (Johnson Aff. ¶ 8.) Johnson swears, "I had no role in deciding where [Plaintiff] would be housed after I removed him from the Capital Construction Unit." (Johnson Supp'l Aff. ¶ 5.)[11]

Plaintiff swears he was "a role model inmate while working for Capital Construction and has never received a charge or disciplinary infraction [at] St. Bride's Correctional Center or Wise Correctional Unit." (Pl.'s 2d Aff. ¶ 9.)

## IV. ANALYSIS

To survive summary judgment, Plaintiff must demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Additionally, "plaintiff must come forward with specific evidence 'establish[ing] that but for the retaliatory motive,'" the defendants would not have taken the allegedly retaliatory action. *Scott v. Kelly*, 107 F. Supp. 2d 706, 709 (E.D. Va. 2000) (alteration in original) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). With respect to demonstrating this causal connection, the United States Court of Appeals for the Fourth Circuit has admonished that prisoner claims of retaliation should be viewed "with skepticism because '[e]very act of discipline by prison officials is by definition

---

[11] Johnson acknowledges that his comment in his first affidavit about contacting the Virginia Department of Corrections Classification Services to move Plaintiff after the project at Wise Unit ended was a misstatement. (Johnson Supp'l Aff. ¶ 5.)

9

retaliatory in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (alteration in original) (quoting *Adams*, 40 F.3d at 74).

Here, Plaintiff does not enjoy a constitutional right to retain a prison job or to avoid a transfer. *Id.* at 1318 (concluding inmate did not enjoy a liberty interest in avoiding an intrastate transfer); *Backus v. Ward*, No. 98-6331, 1998 WL 372377, at *1 (4th Cir. June 8, 1998) (rejecting inmate's claim that he had a protected liberty interest in retaining his prison job); *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) (same). Nevertheless, Defendants do not contest that Plaintiff may enjoy a constitutional right to report misconduct in prison. *See, e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Defendants assert that Plaintiff cannot show that his dismissal from the Construction Unit or any transfer was prompted by a retaliatory motive on their part.

### A. Defendant Yaklin

Plaintiff contends that it is apparent that Yaklin retaliated against him for reporting the drill bit incident because Yaklin warned him that he would not be allowed to work any more if he reported the incident. Nevertheless, contrary to Yaklin's prediction, Plaintiff continued to be employed by the Construction Unit after Plaintiff reported the drill bit incident. Moreover, Plaintiff has failed to present evidence that indicates Yaklin caused Plaintiff's eventual termination from the Construction Unit. *See Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990) (affirming dismissal of claims against prison officials who were not directly involved in the decision which the inmate claimed had led to a deprivation of his constitutional rights). Rather, the record reflects that such a decision was made a couple of months later by Johnson. Accordingly, Claim 1(b) will be dismissed against Yaklin.

B.  **Defendant Johnson**

With respect to Johnson, Plaintiff has failed to adduce evidence from which a reasonable trier of fact could conclude that Johnson's decisions to transfer Plaintiff and subsequently to terminate Plaintiff's employment were motivated by a desire to punish Plaintiff for reporting the drill bit incident. *See Woods*, 60 F.3d at 1166 (concluding that, in order to survive summary judgment with respect to a retaliation claim, "[t]he inmate must produce direct evidence of [retaliatory] motivation or . . . allege a chronology of events from which retaliation may plausibly be inferred") (internal quotation marks omitted). After Plaintiff reported the drill bit incident, he was not fired from the Construction Unit. Rather, he continued to be employed by the Construction Unit for a significant period of time. Indeed, the record indicates that Johnson transferred Plaintiff to the Wise Unit, not to punish Plaintiff for reporting the drill bit incident, but to ensure Plaintiff's continued employment, to separate Plaintiff from Cohrs, and to placate the Warden of St. Brides.[12] *See Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999))).

Although Johnson eventually terminated Plaintiff's employment with the Construction Unit, the record does not reasonably connect that decision to Plaintiff's reporting the drill bit incident. *See id.* Rather, the record reflects that Johnson made that decision because Plaintiff's skills were no longer needed at the construction project at the Wise Unit and the Superintendent

---

[12] Plaintiff has not disputed the fact that the Warden of St. Brides told Johnson that he did not wish for Plaintiff to remain at St. Brides.

of the Wise Unit had informed Johnson that Plaintiff had been causing problems.[13] (Johnson Supp'l Aff. ¶ 5.) Plaintiff has failed to introduce evidence from which a reasonable jury could find that Johnson terminated Plaintiff's employment or arranged Plaintiff's transfer for an impermissible retaliatory motive. *Woods*, 60 F.3d at 1166; *see Boblett v. Angelone*, 942 F. Supp. 251, 254-55 (W.D. Va. 1996) (granting summary judgment and concluding inmate's dismissal from his job was attributable to inmate's disruptive behavior). Accordingly, Claims 1(b) and 2(b) against Johnson will be dismissed.

The motion for summary judgment (Dk. No. 96) will be granted. The action will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: March 14, 2011
Richmond, Virginia

---

[13] Plaintiff insists that he was a "model inmate," and that he was fired from the Wise Correctional Unit Project before the job was finished. (Pl.'s Aff. ¶ 5.) However, it is the perception of the pertinent supervisory officials that is relevant, not Plaintiff's opinion as to his performance and the utility of his continued employment. *See Ware v. Potter*, 106 F. App'x 829, 832 (4th Cir. 2004) (quoting *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998)). In this regard, Plaintiff has not introduced evidence which contradicts the fact that the foreman of the Wise Unit project told Johnson that Plaintiff's skills were no longer needed. Furthermore, it is undisputed that the Superintendent of the Wise Unit informed Johnson that Plaintiff was causing trouble and that he did not wish Plaintiff to remain at the Wise Unit.

12